1
2
3
4

# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
Geragos@Geragos.com

5   MARK J. GERAGOS          SBN 108325
    BEN J. MEISELAS          SBN 277412
6   ZACK V. MULJAT          SBN 304531
    ALEX ALARCON            SBN 305537
7   Attorneys for Plaintiff DANIEL JUNG, individually and
    as the representative of a class of similarly-situated persons

8

9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| DANIEL JUNG, individually and as the representative of a class of similarly-situated persons; | **Case No.: 2:17-cv-03245** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **1. FRAUD**<br>**2. FRAUD—NEGLIGENT MISREPRESENTATION**<br>**3. BREACH OF CONTRACT**<br>**4. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |
| BILLY MCFARLAND, an individual; JEFFREY ATKINS p/k/a JA RULE, an individual; FYRE MEDIA, INC., a Delaware corporation; and DOES 1 through 50, inclusive; | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Plaintiff Daniel Jung, individually and as the representative of a class of similarly-situated persons, alleges as follows:

## INTRODUCTION

1. Defendants promoted their "Fyre Festival" as a posh, island-based music festival featuring "first-class culinary experiences and a luxury atmosphere." Instead, festival-goers were lured into what various media outlets have since labeled a "complete disaster," "mass chaos," and a "post-apocalyptic nightmare."

2. The festival's lack of adequate food, water, shelter, and medical care created a dangerous and panicked situation among attendees—suddenly finding themselves stranded on a remote island without basic provisions—that was closer to "The Hunger Games" or "Lord of the Flies" than Coachella. Festival-goers survived on bare rations, little more than bread and a slice of cheese, and tried to escape the elements in the only shelter provided by Defendants: small clusters of "FEMA tents," exposed on a sand bar, that were soaked and battered by wind and rain.

3. Attendees' efforts to escape the unfolding disaster were hamstrung by their reliance upon Defendants for transportation, as well as by the fact that Defendants promoted the festival as a "cashless" event—Defendants instructed attendees to upload funds to a wristband for use at the festival rather than bringing any cash. As such, Attendees were unable to purchase basic transportation on local taxis or busses, which accept only cash. As a result of Defendants' roadblocks to escape, at least one attendee suffered a medical emergency and lost consciousness after being locked inside a nearby building with other concert-goers waiting to be airlifted from the island.

4. Outrage spread quickly on social media and throughout traditional news outlets, with the New York Times, the Los Angeles Times, the Washington Post, Vanity Fair, and others describing the dangerous events unfolding. Social media users even generated the hashtag "#fyrefraud" to share their harrowing experiences while in Defendants' care.

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

5.      Shockingly, Defendants had been aware for months that their festival was dangerously under-equipped and posed a serious danger to anyone in attendance. Individuals employed by Defendants have since acknowledged that no infrastructure for food service or accommodations was in place as recently as last month—the island was totally barren—and that the few contractors who had been retained by Defendants were refusing to work because they had not been paid.  Various news outlets began describing these logistical problems and labeling the festival as a "scam" weeks ago.

6.      At the same time, however, Defendants were knowingly lying about the festival's accommodations and safety, and continued to promote the event and sell ticket packages.  The festival was even promoted as being on a "private island" once owned by drug kingpin Pablo Escobar—the island isn't private, as there is a "Sandals" resort down the road, and Pablo Escobar never owned the island.

7.      More troublingly, Mr. McFarland and Mr. Atkins began personally reaching out to performers and celebrities in advance of the festival and warned them not to attend—acknowledging the fact that the festival was outrageously underequipped and potentially dangerous for anyone in attendance.

8.      Nevertheless, Defendants refused to warn attendees about the dangerous conditions awaiting them on the island.  Defendants only "cancelled" the event on the morning of the first day—after thousands of attendees had already arrived and were stranded, without food, water, or shelter.

9.      This outrageous failure to prepare, coupled with Defendants' deliberate falsehoods in promoting the island "experience,"  demonstrates that the Fyre Festival was nothing more than a get-rich-quick scam from the very beginning.  Defendants intended to fleece attendees for hundreds of millions of dollars by inducing them to fly to a remote island without food, shelter or water—and without regard to what might happen to them after that.

10.      While Plaintiff is aware that Defendants have made overtures regarding refunds, Class Members' damages in being lured to a deserted island and left to fend

for themselves—a situation tantamount to false imprisonment—exceed the face value of their ticket packages by many orders of magnitude.

11.    Plaintiff brings this class action on behalf of all ticket buyers and festival attendees defrauded and wronged by Defendants, and seeks damages in excess of $100,000,000.00 on behalf of himself and the Class.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over this action under the *Class Action Fairness Act*, 28, U.S.C. § 1332(d), because this is a class action in which: (1) there are more than a one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

13.    In addition, this Court has supplemental jurisdiction over Plaintiff's state claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff and Class Members' claims occurred in the Central District of California as Defendant: (a) is authorized to conduct business in this District and has intentionally availed itself to the laws within this District; (b) currently does substantial business in this District; and (c) is subject to personal jurisdiction in this District.

## PARTIES

15.    At all times relevant to this action, Plaintiff Daniel Jung was a resident of Los Angeles County, California, and a citizen of the State of California.

16.    Upon information and belief, Defendant Billy McFarland was a resident and citizen of the State of New York at all times relevant to this action.

17.    Upon information and belief, Defendant Jeffrey Atkins p/k/a Ja Rule was a resident and citizen of the State of New York at all times relevant to this action.

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

18.     At all times relevant to this action, Defendant Fyre Media, Inc. was a business entity incorporated under the laws of the State of Delaware.

19.     Plaintiff is informed and believes that Defendants sold ticket packages, ranging in price from $1,200.00 to over $100,000.00, to thousands of Class Members who ultimately attended the Fyre Festival.  Upon information and belief, these Class Members are residents and citizens of numerous States and Countries.

20.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as DOES is legally responsible in some manner for the events and happenings referred to herein and caused injury and damage proximately thereby to Plaintiff as hereinafter alleged.  Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when the same have been fully ascertained.

21.     Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Defendants was the agent, servant, employee, co-venturer, and co-conspirator of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency, employment, joint venture and conspiracy.

22.     Plaintiff is further informed and believes, and thereon alleges, that at all relevant times, each Defendant was completely dominated and controlled by its Co-Defendants, and each was the alter ego of the other. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly, and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint,

but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employments.

## GENERAL ALLEGATIONS

23.     Defendants began promoting the Fyre Festival in December 2016.  Set to begin April 28, 2017, Defendants touted their festival as "the cultural experience of the decade," featuring A-list entertainers like Blink-182, Migos, Rae Sremmurd, and Major Lazer, "first-class culinary experiences and a luxury atmosphere," and more than $1,000,000.00 in jewelry, cash, and other products up for grabs in a treasure hunt available to attendees—all taking place on a "private island" in the Bahamas once owned by drug kingpin Pablo Escobar.

24.     Defendants invested enormous amounts of time and money in promoting and advertising their festival domestically and internationally.  They employed hundreds of online "influencers"—including Kendall Jenner, Bella Hadid, and Emily Ratajkowski—to use social media to generate ticket sales, and created extravagant websites and mock-ups of the luxurious villas in which attendees would be staying.

25.     Ticket packages for the event, which were advertised as including luxury accommodations and first-class food, ranged in price from $1,200.00 to well over $100,000.00 per person.   Upon information and belief, Defendants sold many thousands of ticket packages to their festival.

26.     Plaintiff Daniel Jung, pictured below left, purchased a ticket package and airfare to Fyre Festival, totaling approximately $2,000.00 in costs.



27.    As widely reported on social media and through news outlets, the festival was a disaster immediately upon the attendees' arrival.  Concert-goers' luggage was unceremoniously dumped from shipping containers and left for them to rifle through in order to find their personal belongings:



**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

///

///

///

28. Once there, the accommodations were clustered "FEMA tents" (pictured below right), wholly exposed to the elements, rather than the luxurious villas described in Defendants' promotional materials (pictured below left):




GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

///

///

///

29.     In addition to the substandard accommodations, wild animals were seen in and around the festival grounds:



GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

///

///

///

30.     With only unsecured tents as accommodations, rather than the promised villas, attendees had no secure area to store valuables and other personal items:



///

///

///

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

31.     Similarly, the "world-class cuisine" was nowhere to be found, replaced by meager rations that were in dangerously short supply:



32.     Even more troublingly, festival staff were nowhere to be found to address attendees' concerns, and the medical staff was similarly absent:





33.     Faced with the complete lack of even the most basic amenities, as well as no assistance from Defendants, festival attendees began to panic:



34.     Predictably, Attendees began attempting to leave the island en masse, but found themselves trapped—even locked inside an airport awaiting delayed flights:



GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

35.     Unfortunately, festival-goers were unable to escape the unfolding disaster because of their reliance upon Defendants for transportation, and because Defendants promoted the festival as a "cashless" event—Defendants instructed attendees to upload funds to a wristband for use at the festival rather than bringing any cash.  As such, Attendees were unable to purchase basic transportation on local taxis or busses, which accept only cash.  As a result of Defendants' roadblocks to escape, at least one attendee suffered a medical emergency and lost consciousness after being locked inside a nearby building with other concert-goers waiting to be airlifted from the island:



36.     Shockingly, Defendants had been aware for months that their festival was dangerously under-equipped and posed a serious danger to anyone in attendance.  Individuals employed by Defendants have since acknowledged that no infrastructure for food service or accommodations was in place as recently as last month—the island was totally barren—and that the few contractors who had been retained by Defendants were refusing to work because they had not been paid.  Various news outlets began describing these logistical problems and labeling the festival as a "scam" weeks ago.

37.     More troublingly, Mr. McFarland and Mr. Atkins began personally reaching out to performers and celebrities in advance of the festival and warned them not to attend—acknowledging the fact that the festival was outrageously underequipped and potentially dangerous for anyone in attendance.

38.     Nevertheless, Defendants refused to warn attendees about the dangerous conditions awaiting them on the island.  Defendants only "cancelled" the event on the

morning of the first day—after thousands of attendees had already arrived and were stranded, without food, water, or shelter.

## CLASS ACTION ALLEGATIONS

39.     This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. This action satisfies the predominance, typicality, numerosity, superiority, and adequacy requirements of these provisions.

(a) **Numerosity**: The plaintiff class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and based thereon alleges, that over one-thousand (1,000) persons purchased tickets for, and/or attended, Defendants' Fyre Festival.

(b) **Commonality**: Common questions of law and fact exist as to all members of the plaintiff class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

(i) Whether Defendants made false representations about Fyre Festival;

(ii) If so, whether Defendants knew they were false or were reckless as to their veracity at the time they were made;

(iii) Whether Defendants negligently misrepresented various facts regarding Fyre Festival; and

(iv) Whether Defendants breached any implied or explicit contractual obligations to ticket buyers and to attendees of Fyre Festival;

(c) **Typicality**: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the members of the class sustained damages arising out of Defendants' wrongful and fraudulent conduct as alleged herein.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

(d) **Adequacy**: Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff has no interest that is adverse to the interests of the other Class Members.

(e) **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

(f) **Public Policy Considerations**: When a company or individual engages in fraudulent and predatory conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party.  Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of fraud, breach of

1
2
3

contract, and other causes of action, are common to the Class Members. The factual questions relating to Defendants' wrongful conduct and their ill-gotten gains are also common to the Class Members.

4

**FIRST CAUSE OF ACTION**

5

**FRAUD – INTENTIONAL MISREPRESENTATION**

6

*(By Plaintiff Individually and On Behalf of All Class Members*

7

*Against All Defendants )*

8
9
10

40.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

11
12

41.   As stated above, all Defendants made numerous false representations regarding the Fyre Festival.

13
14
15
16
17
18

42.   Defendants represented, among other things, that (1) this event would take place on a private island; (2) the island was previously owned by infamous drug lord Pablo Escobar; (3) all food would be provided, including five-star cuisine; (4) the living quarters would be fully furnished; (5) guests would take private jets from Miami to the festival; and (6) the event would be attended by celebrities and top-level musical talent.

19
20

43.   As the weekend continued, all of the representations made by Defendants proved to be completely false.

21
22
23
24

44.   Defendants have, through various social media outlets, promoted this event vigorously. As the organizers and sponsors of this event, Defendants knew that the representations were false; or at the minimum, Defendants made the representation with reckless disregard for the truth.

25
26

45.   These representations by Defendants were clearly made to promote the event and increase the number of attendees to the event.

27
28

46.   Based on the representations by Defendants, Plaintiff purchased his ticket and attempted to attend the event.

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

47.     Plaintiff expended thousands of dollars on his ticket and travel accommodations to the event. Plaintiff made further expenses on emergency travel after the event collapsed. Additionally, Plaintiff experienced significant emotional pain and suffering from being stranded in a foreign country.

48.     Plaintiff specifically made the above expenses based on his reliance on Defendants' representations. Furthermore, Plaintiff's emotional pain stems from his experiences at the failed event.

## SECOND CAUSE OF ACTION

### FRAUD  - NEGLIGENT MISREPRESENTATION

*(By Plaintiff Individually and On Behalf of All Class Members*

*Against All Defendants)*

49.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

50.     As stated above, all Defendants made numerous false representations regarding the Fyre Festival.

51.     Defendants represented, among other things, that (1) this event would take place on a private island; (2) the island was previously owned by infamous drug lord Pablo Escobar; (3) all food would be provided, including five-star cuisine; (4) the living quarters would be fully furnished; (5) guests would take private jets from Miami to the festival; and (6) the event would be attended by celebrities and top-level musical talent.

52.     As the weekend continued, all of the representations made by Defendants proved to be completely false.

53.     Defendants have, through various social media outlets, promoted this event vigorously. Although Defendants may have honestly believed that these representations were true, based on the lack of preparation of the event, Defendants

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1  had no reasonable grounds for believing the representations were true when they made
2  it.

3      54.    These representations by Defendants were clearly made to promote the
4  event and increase the number of attendees to the event.

5      55.    Based on the representations by Defendants, Plaintiff purchased his ticket
6  and attempted to attend the event.

7      56.    Plaintiff expended thousands of dollars on his ticket and travel
8  accommodations to the event. Plaintiff made further expenses on emergency travel
9  after the event collapsed. Additionally, Plaintiff experienced significant emotional
10  pain and suffering from being stranded in a foreign country.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

*(By Plaintiff Individually and On Behalf of All Class Members*
*Against All Defendants)*

15      57.    Plaintiff realleges and incorporates herein by reference each and every
16  allegation contained in the preceding paragraphs of this Complaint as though fully set
17  forth herein.

18      58.    Plaintiff entered into a contract with Defendants to provide a luxury
19  festival experience in exchange for money. Plaintiff provided payment in
20  consideration for Defendants' promise to provide lavish accommodations, top-tier
21  cuisine, and A-level musical talent.

22      59.    Instead, Defendants breached the contract by providing accommodations
23  rivaling a refugee camp, bread and cheese sandwiches, and no musical acts.

24      60.    Plaintiff expended thousands of dollars on his ticket and travel
25  accommodations to the event.

26      61.    After Defendants failed to perform, Plaintiff expended thousands of
27  dollars on emergency travel plans to leave the event.

28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## FOURTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

*(By Plaintiff Individually and On Behalf of All Class Members Against All Defendants)*

62.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

63.     Plaintiff entered into a contract with Defendants to provide a luxury festival experience in exchange for money. Plaintiff provided payment in consideration for Defendants' promise to provide lavish accommodations, top-tier cuisine, and A-level musical talent.

64.     As shown above, Defendants engaged in disruptive behavior which clearly interfered with Plaintiff's right to receive the benefits of the contract.

65.     Plaintiff expended thousands of dollars on his ticket and travel accommodations to the event. Plaintiff made further expenses on emergency travel after the event collapsed.

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on his own behalf, and on behalf of the Class Members and Sub-Class Members, as well as the general public, prays for judgment as follows:

### **CLASS CERTIFICATION**:

1. For an order certifying the proposed Class;

2. That Plaintiff be appointed as the representative of the Class; and

3. That counsel for Plaintiff be appointed as Class Counsel.

### **AS TO ALL CAUSES OF ACTION**:

1. For all actual, consequential, and incidental losses and damages, according to proof;

2. For punitive damages, where permitted by law;

3. For attorneys' fees, where permitted by law;

4. For costs and suit herein incurred; and

5. For such other and further relief as the Court may deem just and proper.

DATED:  April 29, 2017                **GERAGOS** & **GERAGOS, APC**


By:  /s/ MARK J. GERAGOS
      MARK J. GERAGOS
      BEN J. MEISELAS
      ZACK V. MULJAT
      ALEX ALARCON
      Attorneys for Plaintiff Daniel Jung,
      individually and as the representative of
      a class of similarly-situated persons.

# DEMAND FOR JURY TRIAL

Plaintiff Daniel Jung, individually and as the representative of a class of similarly-situated persons, hereby demands a jury trial.


DATED:  April 29, 2017                    **GERAGOS** & **GERAGOS, APC**


By:   /s/ MARK J. GERAGOS
      MARK J. GERAGOS
      BEN J. MEISELAS
      ZACK V. MULJAT
      ALEX ALARCON
      Attorneys for Plaintiff Daniel Jung,
      individually and as the representative of
      a class of similarly-situated persons.